# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

FILED BY_____D.C.

JAN 17 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

| | | |
|---|---|---|
| JIAN W. HUANG - Attorney Pro Se | ) | January 15, 2022 |
| CHRISTOPHER MORAN | ) | |
| SCHWIFTY MINING CO | ) | |
| WESLEY FAULKENBERRY | ) | |
| ERYN NUNNELLEE | ) | |
| STUART NIXON | ) | |
| FOUNTAINHEAD HOLDINGS LLC | ) | Case Number: |
| CHRISTIAN STROET | ) | |
| MATTHEW DONOVAN | ) | |
| CHARM CITY MINING CORP | ) | |
| MICHAEL ATWOOD | ) | |
| | ) | |
| | ) | |
| Et Al (see Appendix A for additional plaintiffs) | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | AMENDED COMPLAINT: |
| | ) | BREACH OF CONTRACT |
| | ) | NEGLIGENCE, AND |
| Vs. | ) | FRAUD |
| | ) | |
| | ) | DEMAND FOR JURY TRIAL |
| COMPASS MINING INC | ) | |
| WHITNEY J GIBBS | ) | |
| | ) | |

Plaintiffs, by and through its attorneys, file this Complaint against Defendant Compass Mining, Inc. ("Compass") and alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action asserted by Plaintiffs involving claims in an amount exceeding $2,000,000, excluding interest and costs. The Plaintiffs and Defendant are citizens of different states and countries.

2. This court has jurisdiction over the Defendant because it has transacted substantial business in this district, including with some of the Plaintiffs.

## THE PARTIES

3. Plaintiffs are individuals, LLC's and Corporations, and citizens of various states and countries.

4. Defendant Compass Mining Inc. is a Delaware corporation. Compass Mining's principal place of business is Delaware.

## BACKGROUND

5. Plaintiffs are a group of Compass Mining customers, who purchased through Compass Mining, separately and individually, hosting "bundles" and Bitcoin miners and hosting services starting October 2020.

6. Bitcoin mining is a system of highly powerful computers specifically built for solving cryptographic problems and algorithms. The computers are designed and

manufactured specifically for bitcoin mining. There are a few major manufacturers of bitcoin mining systems, the biggest one being Bitmain. A bitcoin mining machine retails for anywhere between $6000 to $12,000 USD, depending on the price of bitcoins, the demand of the market, and various other factors.

7. Defendant Compass Mining is a corporation engaged in the sale and "hosting", or management of the bitcoin mining equipment systems. Compass Mining acts as a reseller of the Bitmain computers, aka miners, and installs the miners and manages their daily operations on behalf of the customers.

8. Bitcoin mining is energy intensive, requires a large source of cheap, accessible power, and the infrastructure to support and maintain mining operations. For these reasons, it is not economically viable for individuals to mine themselves. Rather individuals can participate in a larger "pool" of customers and mine together to leverage the infrastructure and access to power provided by management companies like Compass.

9. Compass acts as a reseller and manager for Customers who purchase bitcoin miners by selling miners and hosting plans that include machines, installation, management, and energy costs, at a fixed monthly rate, called a "hosting fee". These services are aggressively marketed and advertised by Compass. See Appendix ___

10. Compass offered Plaintiffs various "hosting plans" at various hosting facilities that Compass has contracted. The hosting plans allow customers to pay for an "all-in" cost, with monthly payments to Compass in exchange for management services and power.

11. Based on information provided by Compass, customers were led to believe Compass is able to provide reliable data centers and stable power rates. In fact, these were heavily marketed by Compass sales and marketing as one of the main differentiating factors between Compass and other hosting companies.

12. Customers were not provided detailed descriptions or contracts to review, most of the sales were done via emails, Telegram channel, or the phone with Compass customer

representatives. At the execution of the sales contract, customers were presented with a Click Through Terms and Services Agreement. See Appendix B.

13. For each hosting plan Compass sells, Compass is responsible for performing its duties and obligations, including procuring the miners, installing them at a data center, and managing and operating the machines on behalf of the customer. The customer relies on revenue derived from miners performing cryptographic functions.

14. In certain interviews and press releases, Compass executives have stated they have "sold over $500 million in machines and services" since inception. Compass customers purchased these machines and services based on representations that Compass has the ability to execute and competently manage the systems on behalf of its clients.

## FACTUAL ALLEGATIONS

15. Beginning on or around November 2020, and through August 2022, plaintiffs began purchasing Compass "hosting bundles" at various locations that Compass advertised and marketed as "low cost power", or "fixed rate power", and "reliable hosting". Based on these beliefs, plaintiffs made payments and purchased these bundles and entered into hosting management agreements with Compass.

16. In total, the plaintiffs on this claim purchased over $1,750,000 in mining equipment and hosting services from Compass during that period. Relying on Compass' advertising, and representations made via its website, emails, texts, and Telegram messages, phone conversations, and other channels, plaintiffs were made to believe Compass would provide safe and reliable management and hosting of the miners at a fixed monthly fee for a term of 1 to 3 years, depending on the order date.

17. Depending on the order, plaintiffs were told they can expect delivery of their purchased miners from anywhere between 30-150 days, depending on the order, and to be online and mining within that time frame.

18. According to the Terms and Services Agreement, as well as representations in communications with plaintiffs and other customers, customers of Compass can "expect

industry up-time of 95%" on the miners hosted by Compass. Customers can also expect in general any support issues or questions to be responded to by Compass Customer Service "within a timely manner of 48 hours".

19. Plaintiffs dutifully made payments and waited for delivery of the purchased miners to Compass facilities. Almost immediately, the initial orders of plaintiffs were delayed, and when plaintiffs attempted to email, call, or message Compass' Customer Support, requests were often ignored or it took weeks before anyone responded. This scenario played out over and over again with multiple plaintiffs.

20. Compass did eventually take delivery of some of the plaintiffs' miners, and installed them and brought them online. However, in almost every instance, plaintiffs miners were delayed and once turned on, experienced extremely unreliable "uptime", defined as when a miner is working and producing revenue.

21. Not only was Compass not able to deliver its represented uptime of 95% to the plaintiffs, the actual uptime across all of the plaintiffs machines were extremely poor, closer to 50-60% and in some instances, miners were not online at all for weeks or months at a time.

22. On or around December 2020, Compass contracted with Bit River, a Russian hosting company to provide hosting services for Compass' customers at Bit River's facilities in Siberia, Russia. According to a press release, " This new partnership allows investors in North America to access Bit River's enterprise-grade, low-cost and low-carbon cryptocurrency mining facilities in Russia by signing with US-based Compass".

23. Between January 2021 and May 2022, in reliance on Compass' representations concerning its safe and responsible custodianship, Plaintiffs purchased approximately $750,000 in bitcoin mining servers and service plans from Compass, and engaged Compass to manage them at Bit River's facility in Russia.

24. These purchases were made based on Compass' representations made via its website, email communications, texts, and Telegram messages, phone conversations, and other channels. Compass represented that it would provide for the safe and reliable

operation of purchased systems at a fixed monthly fee for a term of 1 to 3 years, depending on the order.

25. On March 3, 2002, in response to rising tensions between Western allies and Russia, as well as rising customers' concerns, Whit Gibbs, the CEO of Compass, issued a statement that: "At this time it is "business as usual", and there is no reason to be worried. I am monitoring closely how sanctions could impact mining but they don't seem to impact us whatsoever… If the situation changes, Compass will take swift action to move all machines out of Russia immediately but at this time drastic action is not needed."

26. On April 20, 2022, the US Department of the Treasury's Office of Foreign Assets Control (OFAC) designated Bit River AG, Compass' Russian hosting partner, and 10 affiliated companies as subject to the broader Executive Order 14024 issued in April 2021, concerning sanctions against Russian entities and individuals. Executive Order 14024 prohibits certain dealings with sanctioned entities or the transfer or export of sanctioned property **located within the US** to the sanctioned party.

27. However, the Order does not prohibit the recapture or the demand for return of property under the temporary control of a sanctioned party. In fact, abandoning tens of millions of dollars of technology equipment to a sanctioned entity would contravene the purpose of the sanctions and unjustly enrich the sanctioned entity.

28. In fact, the US Department of Treasury issued FAQ 1054 on June 6, 2022, to further clarify that the Executive Orders **do not** prohibit US entities and persons from winding down or divesting of an existing investment in a project or operation in the Russian Federation.

29. On April 21, 2022, Compass issued a notice that it has terminated its contractual relationships and dealing with Bit River due to the sanctions imposed by Executive Order 14024. Compass did not offer to return or repatriate the assets entrusted to it by its customers and hosted at Bit River's facilities. When contacted by plaintiffs and customers, Compass representatives told them "Compass Mining is unable to conduct,

or even facilitate, any business dealings with the Russian hosting facility."

30. Concerned by the high value of their machines and the lack of action by Compass, some of the plaintiffs contacted Bit River directly in order to secure the safe return of the valuable hardware. However, Bit River representatives responded by saying " from a legal point of view, Bit River's contract is with Compass, and all equipment is owned by Compass. Thus you must address all questions directly with Compass."

31. It is false that the return of plaintiffs' valuable machines would constitute a violation of Executive Order 14024. Specifically according to FAQ 1504, Compass has both the right and the obligation to effect the return of its customers' miners. It is to be noted that Bit River has refused and ignored all inquiries from Compass customers since "all the equipment is owned by Compass", when in fact Compass should have disclosed to Bit River they are simply the middleman and the machines paid for and owned by plaintiffs.

32. Compass failed to protect its customers interests through subterfuge and misrepresentation to Bit River regarding the actual ownership of its customers' miners.

33. As the plaintiffs will show, Compass is guilty of Breach of Contract, Negligence, and Fraud in its breach of duties to protect plaintiffs' interests.

34. Plaintiffs therefore bring this action to compel Compass to compensate plaintiffs for their entire payments to Compass for the machines and hosting services. Furthermore, plaintiffs ask the Court to compel Compass to compensate plaintiffs for damages on top of the actual payments due to Compass' fraudulent practices.

## FIRST CAUSE OF ACTION
### ( Breach of Contract)

35. Plaintiffs hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

36. Plaintiffs have performed and fulfilled all relevant terms and conditions by paying Compass over $2 million dollars for the procurement, installation, oversight and

management of bitcoin mining systems from Compass.

37. Plaintiffs continue to make timely payments on ongoing management fees charged by Compass even though many mining machines aren't online, and Compass refuses to respond to Plaintiffs' requests for resolution made to its Customer Service department.

38. As represented in its sales and marketing materials, Compass acts as its customers' agent with respect to the operation and management of bitcoin mining systems and management services sold by Compass.

39. In breach of its representations and agreements to the Plaintiffs, Compass has failed to meet the minimum and most basic services it sold to Plaintiffs. Compass has failed to deliver machines to its hosting sites based on its promised delivery timelines communicated to the Plaintiffs, failed to install the machines in a timely manner, failed to maintain the machines online time to mine, and failed to provide even the most minimum of customer service response timelines.

40. As a result of Compass' failures and actions, Compass has breached its agreements to fulfill its promises to the Plaintiffs and properly manage the Plaintiffs' mining systems.

42. Compass has abandoned plaintiffs' bitcoin mining systems, leaving them in the custody of Bit River, without legal justification.

43. Through its breach, Compass has directly caused Plaintiffs damages in the amount of $2,000,000.00, plus hosting fees collected, deposits, and other unearned fees. In addition, Compass has denied Plaintiffs' ability to derive income from mining for an amount to be determined.

## SECOND CAUSE OF ACTION
### ( Negligence)

34. Plaintiffs hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

35. Compass Mining, by accepting payment from the Plaintiffs, agreed to manage Plaintiffs' bitcoin mining systems with diligence, skill, and proper response times to customers' inquiries.

36. Compass failed spectacularly at providing management services to Plaintiffs. Compass failed to use the most minimal efforts to maintain the management and service of Plaintiffs' bitcoin mining systems; many of the Plaintiffs' mining machines have never even been online, months past their promised online time.

37. With many of the Plaintiffs, some of the miners were online for a short period of time, and subsequently offline, or turned off, for a myriad of reasons. For example, Compass claimed multiple times that its facilities had to be shut down, or unsuitable for mining, due to changing utility rates, or due to other circumstances "beyond Compass' control". In these instances, Compass promised to the Plaintiffs that their miners would be relocated to another Compass facility. But in almost every instance, the relocation of these miners far exceeded the promised time frame Compass gave to the Plaintiffs, causing the miners to be offline and generating no revenue for the Plaintiffs for months, some Plaintiffs' miners that were scheduled for relocation have yet to be online after months of delay.

38. All of the Plaintiffs experienced negligence and were ignored when they attempted to reach out to Compass' Customer Service via phone or email. Often it took weeks and multiple messages before a service requested received a response, if at all. As evidenced by Compass' own social media posts which contained numerous angry customers' complaints, Compass refused to provide even the most basic form of service, answering their phone and emails.

39. Compass also failed to promptly act, or even take reasonable steps to ensure Plaintiffs miner are online and producing revenue, it failed to mitigate the impact of Compass terminating its hosting agreements signed with third party providers that caused Plaintiffs miners to be shut down and sitting idle for months at a time.

40. As a result of Compass' negligence, actions and omissions, Compass has breach

its agreements to responsibly manage Plaintiffs' bitcoin mining systems.

41. Through this breach of agreement, Compass has directly caused Plaintiffs in the amount of at least $2,000,000.00, plus hosting fees collected, deposits, and other unearned fees. In addition, Compass has denied Plaintiffs' ability to derive income from mining for an amount to be determined.

## THIRD CAUSE OF ACTION
## ( Fraud)

42. Plaintiffs hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

43. Compass has engaged in a pattern of deceptive and fraudulent misrepresentations in its business practices.

44. In its advertising and marketing, Compass touted its hosting or management services, and low cost power costs that makes bitcoin mining profitable. In reality, Compass concealed its ability to procure power at its advertised prices to the Plaintiffs. Plaintiffs will show through its own investigations, Compass often did not actually have an agreement in place before selling and marketing one of its "hosting bundles". However, Compass repeatedly misrepresented to its potential customers that it had already secured power and hosting agreements in order to get customers' payments.

45. Due to Compass not actually having securely "fixed power" agreements, Compass was subject to rapid changes in the power rates, and thus had to terminate its sites and attempt to relocate the miners to a different location with lower power rates. However, Compass never disclosed this to any of the Plaintiffs and attempted to conceal the reasons and nature of relocations. Compass also went to great lengths to structure the terms of its Services Agreement with customers in such a way that locked the customers into one year, fixed hosting fees even though Compass itself often had to cancel hosting agreements due to power costs disputes, or other issues with its hosting partners.

46. In the process of selling bitcoin mining systems and management services to its

customers, Compass was warranting that its customers were the actual owners of the miners, as such that they would be responsible for the sales tax, maintenance beyond warranty, repair costs, shipping and transport costs. However, in reality Compass fraudulently concealed the true ownership of these expensive bitcoin mining systems to the actual hosting partners Compass entered into agreement with. Thus in the event a customer wanted to know the status or get access to a miner they owned, the customer was told the machines are the property and under ownership of Compass Mining.

47. Through the course of researching this claim and interviews, the Plaintiffs allege that Compass does not have ownership records of each customers' machines. This is evident from 1) ex-employee testimonial that Compass never assigned specific SKU numbers for each machine a customer paid for; 2) customers who requested SKU numbers for their machines for recording purposes were often ignored, and those who did finally receive the SKU numbers, often didn't match the actual machines they received when they asked the machines to be returned to them; 3) some of the Plaintiffs were shipped machines that not only had different SKU's, but old and used when they paid Compass for new machines that were never shown to be online; 4) some of the Plaintiffs were billed for "repairs", when their machines were only a few months old and still under manufacturer's warranty.

48. Further evidence of fraud and concealment is that several Plaintiffs reported seeing their machines online, even though they were told their machines were offline for repairs or relocation and Compass forgot to turn off their access to view the machines. Their machines were assigned a different "user name/owner name" and mining to a different pool. The only reason this would happen is if Compass purposely reassigned the miners to mine under a different name, thus supporting the allegations that Compass knowingly, and willfully, concealed its practices from its customers.

49. Several Plaintiffs have repeatedly asked for the return of their bitcoin miners purchased via Compass, but were ignored or given various excuses even though Compass warranted customers can choose to have their miners returned to them. Several

of these examples exist where no miners were returned even after months of request, This indicates a blatant effort on Compass' part to deny Plaintiffs' ability to generate revenue since they cannot access miners they rightfully own.

50. Compass has repeatedly made false representations and scope of Executive Order 14024. Instead of abandoning its customers' property with Bit River, Compass had an obligation to secure the return of their property consistent with Executive Order 14024 allowing for the divestment or return of assets to US entities and persons.

50. In reliance of Compass' false representations and concealments, Plaintiffs were induced into purchasing and continue to have Compass manage over $1,750,000 dollars in bitcoin mining systems.

51. As a result of Compass' false representations, omissions and concealment of material facts, and failure to act in its customers' interests, Plaintiffs have been damaged in an amount of at least $2,000,000.00, reflecting the amount of payments made to Compass Mining by Plaintiffs.

52. Plaintiffs also suffered significant consequential damages, including the loss of expected revenue from the operations of its miners, time and efforts to communicate and investigate issues related to Compass, interest, legal fees, and other damages. Attorney's fees and punitive damages are warranted because Compass' misrepresentations, fraud, and concealment were deliberate, willful, and oppressive to the Plaintiffs.

## PRAYER FOR RELIEF

Therefore, the Plaintiffs prays for the Court to enter judgment and provide relief as follows:

a) Award Plaintiffs damages of $2,000,000 for Compass' breach of the parties' contracts and additional damages in an amount to be proven at trial;

b) Award Plaintiffs damages for Compass' negligence and its willful willful breach of duty as an agent to manage Plaintiffs mining systems in an amount to be proven at

trial;

c) Award Plaintiffs compensation for Compass' fraud and punitive damages in connection with the Fraud;

d) Award Plaintiffs its attorney fees and costs;

e) Such further and additional relief as the Court deems just and proper;

## JURY DEMAND

Plaintiffs demand a trial by jury.

Amended Complaint Dated:

January 15, 2022

/s/ Jian W Huang

Jian W. Huang

Attorney Pro Se

Appendix A - Additional Plaintiffs

Bryan Goff

Michael Karls

Mark Ozga

Andres Gonzalez

Kokube LLC

Jared Black

Fountainhead Holdings LLC

Steven Davis

Mark Zilinsky

Douglas Lucas

Robert Burks

Mikhael Teryohin

Ti Kawamoto

Eric Putnam

Jack Nguyen

Ian Hoge

Joshua Palomo